# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CHAZ CAMPTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>　　　　　Plaintiff,<br><br>　　　　　vs.<br><br>IGNITE RESTAURANT GROUP, INC., RAYMOND A. BLANCHETTE, III, JEFFREY L. RAGER, EDWARD W. ENGEL, CREDIT SUISSE SECURITIES USA LLC, ROBERT W. BAIRD & CO. INC., PIPER JAFFRAY & CO., KEYBANC CAPITAL MARKETS, INC., LAZARD CAPITAL MARKETS LLC, RAYMOND JAMES & ASSOCIATES, INC.,<br><br>　　　　　Defendants. | Civil Action No.: 4:12-cv-2196<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Chaz Campton ("Plaintiff") makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which investigation included analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about Ignite Restaurant Group, Inc. ("Ignite" or the "Company"), press releases and other public statements issued by the Company, and media reports about the Company.

1

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased the common stock of Ignite pursuant and/or traceable to the Company's Registration Statement(the "Registration Statement") and Prospectus ("the Prospectus") issued in connection with the Company's Initial Public Offering (the "IPO") on May 10, 2012, seeking to recover damages caused by defendants' violations of federal securities laws and to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2.      In the IPO 5,769,231 of the Company's common stock were priced at $14.00/share for total proceeds of over $80 million. On May 11, 2012, trading in the Company's shares opened at $16.85/share.

3.      The registration statement and prospectus, which included the Company's financial results in dating back to 2007, contained misstatements of material fact.  Namely, the registration statements and prospectus contained material errors relating to the Company's accounting treatment of leases since nearly the Company's inception.

4.      On July 18, 2012, Ignite issued an announcement admitting that the Company's previously issued financial statements, including those included in the IPO offering documents, contained material errors and had to be restated.  The announcement states in relevant part:

> Item 4.02.      Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.
>
> (a) On July 18, 2012,  the Board of Directors of Ignite Restaurant Group, Inc. (the "Company"), upon the recommendation of management, concluded that the previously issued financial statements for the years ended December 28, 2009, January 3, 2011 and January 2, 2012 and the twelve week periods ended March 28, 2011 and March 26, 2012 (collectively, the "Restated Periods") should not be relied upon because of errors in the accounting treatment for certain of its leases contained therein (the "Accounting Errors"). Following an internal assessment of its lease accounting policies, the Company has determined it necessary to correct non-cash related errors related to its accounting treatment of certain leases.  Adjustments for these errors will reflect non-cash charges primarily related

to deferred rent.  As a follow-up to this review, the Company is also commencing a detailed review of its historical accounting for fixed assets and related depreciation expense in prior periods as a private company.  Following the completion of the accounting review, the Company, with the concurrence of its independent registered public accounting firm, PricewaterhouseCoopers LLP, will restate its previously issued financial statements for the Restated Periods.

The Company leases 100% of its properties. Historically, when accounting for leases that included stated fixed rent increases, the Company recognized rent expense on a straight line basis over the current lease term with the term primarily commencing when actual rent payments began.  Additionally, the Company did not record straight line rent on leases which contained CPI adjustments that also were subject to stated minimum rent increases. The Company will restate its previously issued financial statements to recognize rent expense on a straight line basis over the effective lease term, including cancelable option periods where failure to exercise such options would result in an economic penalty.  The lease term will commence on the date when the Company establishes effective control over the property. Furthermore, straight line rent will be appropriately calculated on properties with CPI adjustments that are subject to a stated minimum required rent increase. The changes to the recognition of rent expense are timing in nature and do not change the total cash payments or aggregate rent expense over the effective life of the lease term.  The total amount of the increases to historical deferred rent expense will be offset by the same aggregate amount of the adjustments in the form of lower deferred rent expense in the future years of the effective lives of the impacted leases.

The lease accounting errors have been preliminarily quantified by the Company and date back to 2006, the year of the Company's origination.  Therefore, the Company is providing supplemental information detailing the impact of the restatement on the fiscal years ended January 1, 2007, December 31, 2007 and December 29, 2008.

The Company estimates that the aggregate pre-tax effect of the lease accounting related restatement items from 2006 through the first quarter of 2012 will range from $3.4 to $3.8 million.  The non-cash charges will impact deferred rent expense and pre-opening expense (the deferred rent portion only). The cumulative impact of these expenses in 2006 through 2009 is estimated to be $500 to $600 thousand.  The impact is higher from 2010 through the first quarter of 2012 when the Company opened 24 new or converted units. The lease accounting restatement adjustments reduce pre-tax income by an estimated $1.0 million to $1.1 million in 2010, $1.3 to $1.5 million in 2011 and $550 to $650 thousand in the first quarter of 2012. The estimated increases in deferred rent expense and preopening expense will result in a corresponding increase in the deferred rent liability.  The lease accounting related restatement items will not impact the Company's cash flows, revenues or comparable restaurant sales. Additionally, these restatement items will not impact restaurant-level profit margin or Adjusted EBITDA.

During the fixed asset accounting review, the Company will assess historical asset additions, dispositions, useful lives and depreciation from 2006 through the first quarter of 2012. The review will include a store-level fixed asset inventory at all 144 restaurant locations focusing primarily on kitchen equipment and other furniture and fixtures.  This review is likely to result in additional adjustments to our historical financial statements.  Based on the review work completed to date, the Company expects the fixed asset accounting review to result in a minimum of $1.2 million of cumulative pre-tax non-cash adjustments to its financial statements from 2006 through the first quarter of 2012 that will negatively impact net income during those historical periods.  Due to the scope of the review, this work will likely take several weeks and is expected to delay the release of the Company's second quarter earnings release and quarterly report on Form 10-Q.  While the Company is working diligently on its fixed asset accounting review, there can be no assurance as to the precise timing of the review or what adjustments may be necessary to the Company's historical financial statements or which historical periods will be impacted as a result of the review.

In connection with the restatement, the Company will also reclassify $175 thousand of general and administrative expense from the first quarter of 2012 into 2011.  The error correction relates to professional fees for quarterly reviews completed by the Company's independent registered public accounting firm in 2011 that were previously recorded in the first quarter of 2012. This reclassification will have the effect of decreasing net income and Adjusted EBITDA in fiscal 2011 and increasing both measures in the first quarter of 2012.

The Company's estimates for the impact of the accounting adjustments are subject to change as the Company and its independent registered public accounting firm complete their review. The Company will make the appropriate filings with the Securities and Exchange Commission to include the restated financial statements promptly following the completion of review work by the Company and its independent registered public accounting firm. In connection with the restatement, the Company is carefully reviewing potential weaknesses or deficiencies in its internal controls and disclosure controls and evaluating the prompt implementation of necessary measures to remediate any such weaknesses or deficiencies.

The Board of Directors and management have discussed the matters disclosed pursuant to this Item 4.02(a) in this Current Report on Form 8-K with PricewaterhouseCoopers LLP, the Company's independent registered public accounting firm. The Company expects to file a Form 8-K with respect to the restatement promptly upon completion of its accounting review. The filing will contain (1) restated audited financial statements for the fiscal years ended December 28, 2009, January 3, 2011 and January 2, 2012, (2) restated unaudited financial statements for the twelve week periods ended March 28, 2011 and March 26, 2012, and (3) a revised presentation of selected historical consolidated financial and operating data for the fiscal years ended December 31, 2007 and December 29, 2008, December 28, 2009, January 3, 2011 and January 2, 2012 and the twelve week periods ended March 28 2011 and March 26, 2012.

5. This announcement shocked the market and caused the price of Ignite stock to drop $3.91/share to 20.5% to $15.15/share.

## JURISDICTION AND VENUE

6. The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77(o). Section 22 of the Securities Act provides for jurisdiction over Securities Act claims in this Court.

7. This Court has jurisdiction over the subject matter of this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. §77v(a).

8. Venue is proper in this Judicial District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a). Pursuant to 28 U.S.C. § 1391(d), Ignite may be properly sued in any District in the United States, including the Southern District of Texas. Moreover, many of the acts and transactions alleged herein, including the negotiation, preparation and dissemination of many of the material misstatements and omissions contained in the Registration Statement and Prospectus, filed in connection with the IPO, occurred in substantial part in the State. Additionally, the shares sold in connection with the IPO were actively marketed and sold in this State. Thus, venue is proper in this District.

9. In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

10. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Ignite common stock, pursuant to or traceable to the Company's IPO and was economically damaged thereby.

11. Defendant Ignite, headquartered in Houston Texas, together with its subsidiaries, engages in restaurant business. As of July 15, 2011, it owned and operated 117 restaurants under Joe's Crab Shack brand and 17 restaurants under Brick House Tavern+Tap brand in 32 states. The company was formerly known as Joe's Crab Shack Holdings, Inc. and changed its name to Ignite Restaurant Group, Inc. in July 2009. The company was founded in 1991 and is based in Houston, Texas. Ignite Restaurant Group, Inc. is a subsidiary of JCS Holdings, LLC.

12. Defendant Raymond A. Blanchette, III ("Blanchette"), is Ignite's CEO, President and Director.  Blanchette signed the IPO registration statement.

13. Defendant Jeffrey L. Rager ("Rager"), is Ignite's Senior Vice President and CFO. Rager signed the IPO registration statement.

14. Defendant Edward W. Engel ("Engel"), is Ignite's General Counsel.  Engel signed the IPO Registration statement.

15. Defendants Blanchette, Rager, and Engel are collectively referred to herein as the "Individual Defendants."

16. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") operates as an investment bank in the United States and maintains its headquarters in New York City. Its business includes securities underwriting, sales and trading, investment banking, private equity, alternative

assets, financial advisory services, investment research, and asset management. Credit Suisse was an underwriter for the IPO.

17.     Defendant Robert W. Baird Co. Inc. ("Robert Baird") is an investment bank headquartered in Milwaukee, Wisconsin. Its business includes securities underwriting, sales and trading, investment banking, private equity, alternative assets, financial advisory services, investment research, and asset management. Robert Baird was an underwriter for the IPO.

18.     Defendant Piper Jaffray & Co. ("Piper") is an investment bank headquartered in Minneapolis, Minnesota. Its business includes securities underwriting, sales and trading, investment banking, private equity, alternative assets, financial advisory services, investment research, and asset management. Piper was an underwriter for the IPO.

19.     Defendant KeyBanc Capital Markets, Inc. ("KeyBanc") is an investment bank headquartered in Cleveland, Ohio. KeyBanc was an underwriter for the IPO.

20.     Defendant Lazard Capital Markets LLC ("Lazard") is an investment bank headquartered in New York, New York. Lazard was an underwriter for the IPO.

21.     Defendant Raymond James & Associates, Inc. ("Raymond James") is an investment bank headquartered in St. Petersburg, Florida. Raymond James is an underwriter for the IPO.

22.     Credit Suisse, Robert Baird, Piper, KeyBanc, Lazard, and Raymond James are collectively referred to herein as "Underwriter Defendants."

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of himself and on behalf of all purchasers of common stock of Ignite pursuant to and/or traceable to the Company's false and misleading Registration Statement and Prospectus issued in connection with its IPO and who were

damaged thereby (the "Class"), pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class. Excluded from the Class are Defendants herein, members of the immediate family of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

24. The members of the Class are so numerous that joinder of all members is impracticable. Over 5 million shares were sold in the IPO which were then actively traded on the NASDAQ. The precise number of the Class members is unknown to Plaintiff at this time but it is believed to be in the thousands. Members of the Class may be identified from records maintained by Ignite or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in securities class actions.

25. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

26. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

27. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

28. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether the Prospectus and Registration Statement issued by Defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts concerning Ignite and its business; and

(c) the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## COUNT 1
### Violation of Section 11 of the Securities Act
### Against All Defendants

30. Plaintiff repeats and realleges each and every allegation contained above.

31. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

32.     Ignite is the registrant for the IPO. The Individual Defendants are responsible for the contents of the Registration Statement based upon their status as directors of the Company or because they signed or authorized the signing of the Registration Statement on their behalf pursuant to Sections 11(a)(1)-(3) of the Securities Act. The Underwriter Defendants are responsible for the contents of the Registration Statement pursuant to Section 11(a)(5) of the Securities Act.

33.     As issuer of the shares, Ignite is strictly liable to Plaintiff and the Class for the misstatements and omissions.

34.     Ignite is strictly liable for the contents of the Registration Statement. The Individual Defendants failed to make a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

35.     By reasons of the conduct herein alleged, each Defendant named in this Count violated Section 11 of the Securities Act.

36.     Plaintiff acquired Ignite shares pursuant to the Registration Statement.

37.     Plaintiff and the Class have sustained damages. The value of Ignite shares has declined substantially subsequent to and due to Defendants' violations.

38.     At the times Plaintiff purchased Ignite shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the IPO. Less that none year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years elapsed

between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## COUNT II
### Violations of Section 12(a)(2) of the Securities Act
### Against the Underwriter Defendants

39.     Plaintiff repeats and realleges each and every allegation contained above. This cause of action is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §§ 77l(a)(2), against the Underwriter Defendants on behalf of Plaintiff and other members of the Class who purchased or acquired registered shares of Ignite common stock pursuant to the Prospectus and offering documents and any other oral or written communications used to solicit the IPO, including free writing prospectuses and road shows, and were damaged by the acts alleged herein.

40.     The Defendants named in this Count sold, offered for sale, and solicited the sale of the common stock by the use of means or instruments of transport or communication in interstate commerce or of the mails, by means of the Prospectus or oral or other written communications, including the offering documents, The Prospectus and offering documents contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as alleged herein.

41.     The Underwriter Defendants committed to and purchased Ignite's registered common stock from Ignite and sold the registered common stock to Plaintiff and members of the class by the use of means or instruments of transport or communication in interstate commerce or of the mails, by means of the Prospectus or oral or other written communications, including the offering documents.

42.     The Defendants named in this Count actively solicited the sale of the common stock to serve their own financial interests through, among other things, the preparation and dissemination of the Prospectus, participating in road shows, and the planning and orchestrating of all activities necessary to promote the sale of the common stock.

43.     The Prospectus and offering documents contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as alleged herein.

44.     The Defendants named in this Count knew or in the exercise of reasonable care should have known that the Prospectus and offering documents contained statements of material fact that were misleading as alleged herein or that material facts necessary to make the statements not misleading should have been disclosed, as alleged herein. None of the Defendants made a reasonable investigation or had reasonable grounds to believe that the statements in the Prospectus were accurate and complete in all material respects.

45.     Plaintiff and members of the Class purchased registered shares of Ignite common stock in the IPO and were damaged thereby.

46.     At the times he purchased Ignite shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the IPO. Less than one year has elapsed form the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

47.     By reason of the foregoing, the Defendants named in this Count are liable to Plaintiff and members of the class for violations of Section 12(a)(2) of the Securities Act. Plaintiff and Class members hereby tender their registered shares of Ignite common stock to the Defendants named in this Count and seek rescission of their purchases to the extent that they continue to own such securities.

## COUNT III
### Violations of Section 15 of the Securities Act
### Against Individual Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above.

49.     This claim is asserted against the Individual Defendants, each of whom was a control person of Ignite during the relevant time period.

50.     For the reasons set forth above in the First Claim, above, Ignite is liable to the Plaintiff and the members of the Class who purchased Ignite shares in the IPO based on the untrue statements and omissions of material fact contained in the Registration Statement and Prospectus, pursuant to Section 11 of the Securities Act, and were damaged thereby.

51.     The Individual Defendants were control persons of Ignite by virtue of, among other things, their positions as senior officers of the Company, and they were in positions to control and did control, the false and misleading statements and omissions contained in the Registration Statement and Prospectus.

52.     None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

53.     This claim was brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after Ignite shares was sold to the Class in connection with the IPO.

54.     By reason of the misconduct alleged herein, for which Ignite is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as Ignite pursuant to Section 15 of the Securities Act.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  July 20, 2012	Respectfully submitted,

                **PAYNE MITCHELL LAW GROUP, LLP**


                */s/ R. Dean Gresham*_____
                R. Dean Gresham, Attorney in Charge
                Texas Bar No. 24027215
                2911 Turtle Creek Blvd., Suite 1400
                Dallas, Texas 75219
                Telephone: (214) 252-1888
                Facsimile: (214) 252-1889
                Email:  dean@paynemitchell.com

                OF COUNSEL:

                **THE ROSEN LAW FIRM, P.A.**
                Phillip Kim, Esq. (not admitted)
                Laurence M. Rosen, Esq. (not admitted)
                275 Madison Avenue, 34th Floor
                New York, New York 10016
                Telephone: (212) 686-1060
                Fax: (212) 202-3827
                Email: pkim@rosenlegal.com
                Email: lrosen@rosenlegal.com

                Attorneys for Plaintiff