IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHAZ CAMPTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | § § § § | |
| Plaintiffs | § § | |
| v. | § § | Civil Action No. 4:12-2196 |
| IGNITE RESTAURANT GROUP, INC., et. al., | § § § § | |
| Defendants | § | |

## ORDER

Pending before the Court is Co-Defendants Blanchette, Engel, Ignite Restaurant Group, Inc., and Rager's Motion to Dismiss (**Instrument No. 59**). Also pending before the court is Co-Defendants Credit Suisse Securities USA LLC, Keybanc Capital Markets, Inc., Lazard Capital Markets LLC, Piper Jaffray & Co., Raymond James & Associates, Inc., Robert W. Baird & Co. Inc.'s Motion to Dismiss. (**Instrument No. 60**).

### I.

### A.

This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of Ignite pursuant and/or traceable to Defendant Ignite Restaurant Group, Inc.'s ("Ignite") Registration Statement (defined below) or Prospectus (defined below) issued in connection with the Company's Initial Public Offering (the "IPO") on May 10, 2012 (the "Class"). This First Amended Complaint (the "Complaint") seeks to recover damages to Class members caused by Defendants' violations of federal securities laws and to pursue remedies under the Securities Act of 1933 (the "Securities Act"). Defendant Ignite

owns and operates two restaurant businesses. Lead Plaintiff Chaz Campton ("Campton" or "Plaintiffs") was an investor in Defendant's business.[1] Plaintiff claims that Defendant made misstatements that caused the price of the stock to fall. Plaintiff files suit under Sections 11 and 15 of the Securities Act.

## B.

On May 10, 2012, Ignite commenced its IPO, offering 5,769,231 shares of stock to the public at a price of $14.00 per share. (Instrument No. 46 at 8). The IPO was completed on May 16, 2012, the last day on which Ignite stock was available directly from the IPO. (Instrument No. 46 at 9).

On July 18, 2012, Ignite announced that it had made material errors in the accounting treatment for certain of its leases. Ignite announced that its audited financial statements for Fiscal Years 2007, 2008, 2009, 2010, and 2011, and unaudited financial statements for the 12 week periods ending in March 28, 2011, and March 26, 2012, contained accounting errors and should no longer be relied upon. (Instrument No. 52 at 6). Ignite estimated that the cumulative impact of the restatement on pre-tax income when it would be filed would be approximately $3.4-$3.8 million. (Instrument No. 52 at 6).

On July 18, 2012, Ignite's stock price fell from $19.06/share to $15.15/share after the announcement that the financial statements would be restated. (Instrument No. 38 at 7).

On October 30, 2012, Ignite restated its financial statements. Ignite's financial statements had contained errors relating the accounting treatment of its leases, historical accounting for

---

[1] The parties involved in this suit are numerous. Plaintiffs include Chaz Campton, Cynthea Rumenapp, and all those in their class. Defendants include Raymond Blanchette, III, Jeffrey Rager, Edward Engel, and Ignite Restaurant Group, Inc.. Underwriting the motion are Defendants Robert Baird & Co. Inc., Piper Jaffray & Co., Keybanc Capital Markets, Inc., Lazard Capital Markets LLC, Raymond James & Associates, Inc., and Credit Suisse Securities USA LLC. For the sake of brevity, the plaintiffs will be referred to as either "Plaintiffs" or "Campton." Similarly, the defendants will be referred to as either "Defendants" or simply "Ignite."

fixed and related items, advertising production costs, vacation accrual, liquor licenses, professional fees, and income tax items. Operating income decreased by 39.1%, 220.9%, 4.7%, 12.2%, 15.2% for Fiscal Years 2007-2011, and by 30.0% and 18.5% for the twelve weeks ending March 28, 2011 and March 26, 2012. (Instrument No. 52 at 6). Net income before taxes decreased by 18.9% and 29.3% for Fiscal Years 2010 and 2011, and 146.5% and 33.0% for the twelve weeks ending March 28, 2011 and March 26, 2012. (Instrument No. 52 at 6). Net income after taxes increased in 2011 because Ignite paid taxes on income it had not earned. The restatement reduced pre-tax income by $9.7 million and net income by $6.4 million. On October 30, the stock price fell from $13.26/share to $11.46/share. (Instrument No. 38 at 8).

### C.

On July 20, 2012, shortly after the first announcement, Plaintiffs filed a class-action suit in the United States District Court in and for the Southern District of Texas. In the Complaint, Plaintiffs sue the Defendants for violating federal securities laws and pursue remedies under Section 11, Section 12, and Section 15 of the Securities Act of 1933. (Instrument No. 1). On December 6, Plaintiff filed an amended complaint where they only sought to pursue remedies under Section 11 and Section 15 of the Securities Act. (Instrument No. 38). In the Amended Complaint, Plaintiffs contended that Defendants violated Section 11 when the Prospectus and Registration Statement made material misrepresentations regarding the revenue of the business. (Instrument No. 38 at 3).

On February 12, 2013, Defendants Blanchette, Engel, Rager, and Ignite filed a motion to dismiss. (Instrument No. 46). Also on February 12, 2013, Defendants Credit Suisse Securities USA LLC, Keybanc Capital Markets, Inc., Lazard Capital Markets LLC, Piper Jaffray & Co., Raymond James & Associates, Inc., Robert W. Baird & Co. Inc., filed a motion to dismiss, citing

the same grounds presented by Ignite. (Instrument No. 47). In the motion to dismiss, Defendants argued that Plaintiffs do not have standing to sue under Section 11 of the Securities Act because they do not have any damages. Specifically, Defendants contended that because the price of the stock at the time of suit was higher than the price at the Initial Public Offering, Plaintiffs cannot show that they suffered any damages as a result of the alleged misstatements. (Instrument No. 46 at 7). Defendants also contended that Plaintiffs cannot show that the Defendant made any material misstatements in the registration statements. On March 14, 2013, Plaintiffs filed their response to the motion. (Instrument No. 52). In the Response, Plaintiff argued that they do have standing to prosecute this action because the stock price at the time of suit did not reflect the true value of the security, and in fact the value of the stock at the time of suit was less than the amount they paid. On March 29, 2013, Defendants filed their reply. In the Reply, the Defendants re-urged the arguments advanced in the motion to dismiss and the Defendants further argued that Plaintiff has not advanced any allegation that the price of the stock was not a sufficient indicator of its value. (Instrument No. 53).

On September 3, 2013, the Court granted Defendants' Motions to Dismiss without prejudice to Plaintiffs filing a second amended complaint within 15 days. (Instrument No. 55). Specifically, the Court found that Plaintiffs had failed to allege any facts that would lead the Court to believe that the value of the stock on July 20th could not be approximated by the stock's price.

On September 18, 2013, Plaintiffs filed a second amended complaint, to address the deficiencies identified in the Court's previous order. (Instrument No. 56). On October 28, 2013,

Defendants Blanchette, Engel, Rager, and Ignite filed a motion to dismiss.[2] (Instrument No. 59). Also on October 28, 2013, Defendants Credit Suisse Securities USA LLC, Keybanc Capital Markets, Inc., Lazard Capital Markets LLC, Piper Jaffray & Co., Raymond James & Associates, Inc., Robert W. Baird & Co. Inc., filed a motion to dismiss, citing the same grounds presented by Ignite. (Instrument No. 60). The motions to dismiss reassert the arguments from the prior motions to dismiss that Plaintiffs cannot show damage and that Plaintiff cannot show material misstatements in the registration statements. On December 6, 2013, Plaintiffs filed a response to Defendants' motions to dismiss. (Instrument No. 61). On December 23, 2013, Defendants filed Replies to Plaintiffs' Response. (Instrument Nos. 62 and 63).

## II.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, a complaint that articulates "naked assertions devoid of further factual enhancement" is similarly insufficient to satisfy the pleading requirements of Rule 8. *Iqbal*, 556 U.S. at 678 (internal punctuation omitted).

When a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must articulate

---

[2] The Court ordered on October 1, 2013, that Defendants must file motions to dismiss by October 28, 2013. (Instrument No. 58). The Court further ordered that Plaintiffs' response would be due on December 6, 2013, and Defendants' replies to that response would be due on December 23, 2013.

"the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Stated otherwise, in order to withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010). A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. This "plausibility standard is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Twombly*, 550 U.S. at 557.

Under this rubric, dismissal is proper only if the plaintiff's complaint: (1) does not include a cognizable legal theory, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), or (2) includes a cognizable legal theory but fails to plead enough facts to state a claim to relief that is plausible on its face, *Pleasant*, 663 F.3d at 775; *see also Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998) (Gilmore, J.) (holding that dismissal pursuant to Rule 12(b)(6) "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory").

When ruling on a 12(b)(6) motion, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[3] *Wolcott v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). The Court does not resolve any disputed fact issues. *Davis v. Monroe City Bd. of Educ.,* 526 U.S. 629, 633 (1999). Instead, the Court assumes all well-pleaded facts contained in the complaint are true. *Wolcott,* 635 F.3d at 763. The Court will not, however "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge & Dock Co. LLC v. La. State,* 624 F.3d 201, 210 (5th Cir. 2010). Similarly, legal conclusions masquerading as factual conclusions need not be treated as true. *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995); *see also Iqbal,* 556 U.S. at 678. Although all well-pleaded facts are viewed in the light most favorable to the plaintiff, *Turner,* 663 F.3d at 775; *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009), the Court "will not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (internal citations and quotations omitted). Therefore, "to avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts." *Dorsey,* 540 F.3d at 338.

That said, "motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). Given the harshness of dismissal, the Court will generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter &*

---

[3] Matters of which a court may take judicial notice include, for example, matters of public record. *See Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 286 (5th Cir. 2006).

*Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given.") (internal citations omitted).

### III.

"Section 11 of the 1933 Act allows purchasers of a registered security to sue certain enumerated parties in a registered offering when false or misleading information is included in a registration statement." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 (1983); 15 U.S.C. § 77k (2005); *Pierce v. Morris*, 2006 U.S. Dist. WL 2370343 at 2 (N.D. Tex. Aug. 16, 2006).

> [Section 11] was designed to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering. If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements.

*Herman & Maclean*, 459 U.S. at 381-82. The burden on a Section 11 plaintiff is relatively light since that section encompasses a strict liability standard. *Id.*

The elements of a § 11 claim are: (1) an omission or misrepresentation of (2) a material fact required to be stated or necessary to make other statements made not misleading. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1445 (5th Cir. 1993); *accord In re Pilgrim's Pride Corp. Sec. Litig.*, 2010 WL 3257369 at 30 (E.D. Tex. 2010). A fact is "material" if "a reasonable investor would consider [it] significant in the decision whether to invest, such that it alters the total mix of information available about the proposed investment." *BancTexas*, 989 F.2d at 1445.

### A.

Although Plaintiff need only allege an omission or misrepresentation of material fact in a registration in order to state a claim under section 11, a plaintiff cannot maintain a section 11 cause of action unless he was harmed by the omission or misrepresentation. *See NECA-IBEW*

*Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145, 165 (2d Cir. 2012) ("While a plaintiff need not plead damages under § 11, it must satisfy the court that it has suffered a cognizable injury under the statute"); *Pierce v. Morris,* 2006 WL 2370343, at 4 (N.D. Tex. 2006) ("where a plaintiff fails to allege any conceivable damages for violation of the Securities Act his claims must be dismissed); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1168-69 (C.D. Cal. 2008) ("damages are not an element [of a section 11 claim]...[but] lack of damages [is] an affirmative defense [to a section 11 claim]"); *In re Initial Public Offering Sec. Lit.*, 241 F. Supp. 2d 281, 347, 347 n. 76 (S.D.N.Y. 2003) (noting that although plaintiff has no duty to plead damages in order to state a valid section 11 claim, her suit must be dismissed if she has no conceivable damages under section 11).

Defendants move to dismiss on the grounds that Plaintiffs have no standing to sue under Section 11 of the Securities Act because they cannot prove any damages. Under Section 11 of the Securities Act, damages consists of "the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and

> (1) the *value* thereof as of the time such suit was brought, or
> (2) the *price* at which such security shall have been disposed of in the market before suit, or
> (3) the *price* at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as the time such suit was brought."

15 U.S.C. § 77k(e) (emphasis added). In this case, Plaintiffs have not disposed of the shares they obtained in the IPO. *See* (Instrument No. 38 at 9). Section 11(e) sets the measure of damages for a plaintiff still holding her securities at the "value" of those securities at the time of the suit, however, value is not necessarily equal to "price." *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 65 F.3d 1044, 1048-49 (2d Cir. 1995). The term "value" in section 11(e) was intended to mean the security's true value after the alleged misrepresentations are made public.

9

*Id.* at 1048. The "value of a security may not be equivalent to its market price. Congress' use of the term 'value,' as distinguished from the terms 'amount paid' and 'price' indicates that, under certain circumstances, the market price may not adequately reflect the security's value." *Id.* at 1048-49. That said, "instances where the market price of a security will be different from its value are unusual and rare situations. Indeed, in a market economy, when market value is available and reliable, market value will always be the primary gauge of an enterprise's worth." *Id.* at 1049. "Moreover, even where market price is not completely reliable, it serves as a good starting point in determining value." *Id.* Where the Plaintiff has alleged facts showing that the price of the stock is not an indicator of its value, the determination of value becomes a fact-intensive inquiry that cannot be resolved at the motion to dismiss stage. *See In re Initial Public Offering Sec. Lit.*, 241 F. Supp. 2d at 351 n.80.

In this case, Defendants attempt to discharge their burden of demonstrating that the "difference between the amount paid for the security . . . and the value thereof as of the time suit was brought" is de minimus by showing that the price of the stock on the day suit was brought exceeded the amount paid for the security. In support of its argument, Defendants note that when Plaintiff filed suit, on July 20, 2012, the stock was trading at $14.20/share which exceeded the IPO price of $14.00/share. Accordingly, Defendants have made a threshold showing that Plaintiffs have no damages.

Plaintiffs, however, insist that they do have damages. Plaintiffs contend that the market price for the stock was not an accurate reflection of the true value on July 20th. Plaintiffs argue that the stock price was still artificially inflated because the July disclosure did not fully reveal the extent of the company's previous misstatements. Specifically, Plaintiffs' Second Amended Complaint alleges that the October 30th announcement revealed a cumulative reduction of pretax

income nearly twice that estimated during the initial July disclosure. (Instrument No. 56, at 9). Furthermore, Plaintiffs allege that the October announcement revealed, for the first time, restatement adjustments related to historical accounting for fixed assets, advertising production costs, vacation accrual, liquor licenses, professional fees, and income tax items. *Id.*

Plaintiffs have alleged sufficient facts to suggest that the market price on July 20th was artificially inflated and thus not an accurate reflection of the value of the stock on the day this suit was brought. *See In re Initial Public Offering Sec. Lit.*, 241 F. Supp. 2d at 351 n.80. Typically, courts only deviate from the market price where the stock is illiquid or where some market anomaly exists. *See Beecher v. Able*, 435 F.Supp. 397, 404-05 (S.D.N.Y. 1977) (adjusting the market price to account for panic selling in the market that was unrelated to the misrepresentations in the registration statements); *NECA-IBEW Health & Welfare Fund*, 693 F.3d at 165 (finding a change in value based on the downgrade of a credit rating where the security traded on an illiquid market and thus had no actual market price). However, courts have recognized the possibility that market price may not reflect value where the price is artificially inflated by misstatements or lack of public information relating to the true value. *See Grossman v. Waste Management, Inc.*, 589 F.Supp. 395, 416 (N.D. Ill. 1984) (holding that misleading public statements by the company may artificially inflate stock prices such that market price is not an accurate reflection of actual value). Defendants argue that the alleged misrepresentations in this case were in fact made public in July, satisfying the terms of *McMahon*, but Plaintiffs have alleged facts suggesting that this disclosure failed to make public all misrepresentations, or in fact included new misinformation that artificially inflated the stock price. Specifically, Plaintiffs show that the October announcement included greater than expected adjustments to pre-tax income during the years in question, and following this disclosure, the stock price

dropped significantly for a second time. While a corrective disclosure "need not precisely mirror [an] earlier misrepresentation," *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009), the Court finds that Plaintiffs have alleged sufficient facts to show that the July disclosure failed to fully correct the prior misrepresentation for the purposes of calculating stock value at the time suit was brought.[4]

Therefore, Plaintiffs have alleged sufficient facts to plausibly show that the value of their securities at the time of suit was less than the offering price.

### B.

Defendants also argue that Plaintiffs have failed to state a Section 11 claim, because any alleged misstatements in the registration statement were immaterial as a matter of law. Specifically, Defendants note that departures from Generally Accepted Accounting Principles (GAAP), like those complained of here, while material from an accounting perspective, are not material under federal securities law.

A misstatement or omission in a registration statement is material for the purposes of Section 11 "if there is a substantial likelihood that a reasonable shareholder would consider it important in making an investment decision." *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 213-14 (5th Cir. 2004) (citations omitted). Courts consider whether, under all the circumstances, disclosure of the information would "significantly alter[] the total mix of information made available." *Isquith for & on Behalf of Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 208 (5th Cir. 1988) (citations omitted). "Materiality is not judged in the abstract, but in light of the

---

[4] Defendants argue that the Court has already found, in its prior Order (Instrument No. 55), that the July 18 Announcement was fully corrective, and that that finding is "law of the case." The Court, however, did not find that the July Announcement was fully corrective as a matter of law, but simply found Plaintiffs had failed at the time to demonstrate how the Announcement was not corrective, or how the stock price was otherwise inadequate to show value. The Court afforded Plaintiffs an opportunity to amend their complaint, precisely to plead this issue more clearly.

surrounding circumstances." *Krim*, 989 F.2d at 1448. Courts, therefore, consider the prospectus "as a whole" when determining the materiality of misstatements. *Id.* "Materiality is traditionally a question of fact, but if the alleged omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality the court may rule them immaterial as a matter of law." *In re TETRA Technologies, Inc. Securities Litigation*, 4:08-CV-0965, 2009 WL 6325540, *4 (S.D. Tex. July 9, 2009) (quoting *Klein v. Gen. Nutrition Companies, Inc.*, 186 F.3d 338, 342 (3d Cir. 1999)).

Plaintiffs argue that the materiality of the misstatements should be presumed because the stock price allegedly dropped by 20.5% in one day following the July announcement, and an additional 13.5% immediately following the October announcement. Evidence that stock price moved significantly is relevant to the issue of materiality but is not determinative. *Coates v. Heartland Wireless Communications, Inc.*, 55 F.Supp.2d 628, 640 (N.D. Tex. 1999) (citing *Geiger v. Solomon-Page Group, Ltf.*, 933 F.Supp. 1180, 1188 (S.D.N.Y. 1996), *see also Rubinstein v. Collins*, 20 F.3d 160, 169-70 (5th Cir. 1994) (holding in a case brought under Section 10(b) of the 1934 Act that "inside information is presumptively material . . . given the allegation that within one day of publication of the [information, the] stock price fell by one-third."); *In re Merck & Co., Inc. Securities Litigation*, 432 F.3d 261, 273-74 (3rd Cir. 2005) (holding that materiality under Section 11 can be demonstrated, just as in Section 10(b) cases, "post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock."). Therefore, in determining materiality, the Court takes into consideration Plaintiffs' allegations of significant drops in stock price, but must also consider the language of the prospectus as a whole.

Plaintiffs allege that Defendants failed to comply with GAAP prior to the IPO, and that the registration statement included misstatements as a result. Specifically, Plaintiffs allege that the July disclosure noted problems with the accounting treatment of certain leases from 2009-2011, the historical accounting for fixed assets and related depreciation between 2006 and 2012, and general and administrative expenses for the first quarter of 2012. The October 30th announcement revealed a cumulative pretax correction of $9.4 million dollars during the restated periods. Plaintiffs calculate that this resulted in a 32.3% greater pretax loss in 2007, a 35.9% greater pretax loss in 2008, 6.1% less pretax income in 2009, 18.9% less pretax income in 2010, and 29.3% less pretax income in 2011. A reasonable shareholder would likely consider misstatements related to the company's income important in making an investment decision. *See Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 830 (8th Cir. 2003) ("Most investors would consider it significant, no matter what the mix of information available, that a company was not earning as much as it was claiming to earn. The onus is on the defendants to demonstrate why this assumption should not stand."). Defendants, however, suggest that in this case, despite the significant corrections to income, the misstatements were ultimately immaterial.

Defendants first argue that the misstatements in this case were immaterial because the prospectus warned investors of certain risk factors. Specifically, the prospectus warned that the company had not previously been subject to the reporting requirements of the 1934 Act and that it was working "to identify those areas in which changes should be made to our financial and management control systems." (Instrument No. 46, at 23). "Cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law." *Truk Intern. Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 620 (N.D. Tex. 2009) *aff'd,* 389 Fed. Appx. 354 (5th Cir. 2010) (quoting *In re Donal J. Trump Casino Sec. Litig.*, 7 F.3d 357, 371 (3d Cir. 1993).

However, in this case, the cautionary language is insufficient and does not render the misrepresentation immaterial because the warning here was boiler-plate and overly broad. The prospectus cautioned that the company was working to "identify those areas in which changes should be made to our financial and management control systems . . . [including] corporate governance, corporate control, internal audit, disclosure controls and procedures and financial reporting and accounting systems." (Instrument No. 59-1, at 46-47). "[G]eneral cautionary language fails to excuse a failure to reveal known, material, adverse facts." *Kurtzman v. Compaq Computer Corp.*, CIV.A.H-99-779, 2000 WL 34292632 (S.D. Tex. Dec. 12, 2000), *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 244-45 (5th Cir. 2009) (holding that generic language that was "merely a litany of general applicable risk factors" was not meaningfully cautionary and was inadequate to satisfy the "safe harbor" provision of the Private Securities Litigation Reform Act, in defending against a Section 10(b) claim).

Defendants next argue that the misstatements were immaterial because "key performance indicators" were unaffected by the Restatement. Defendants derive these indicators from the original prospectus, which instructed investors to look to six key performance indicators when gauging the financial health of the company: comparable restaurant sales growth, average weekly sales, restaurant operating weeks, average check, average unit volume, and number of restaurant openings. (Instrument No. 46-1, at 68-69). Defendants argue that misstatements are necessarily immaterial where revisions do not alter measures of the company's value as identified in the prospectus. Defendants rely on *SEC v. Monterosso*, 768 F.Supp.2d 1244, 1263 (S.D. Fla. 2011) for the proposition that the court attached materiality to the misstatement of revenue numbers only because the defendant had "routinely emphasized these numbers and its success in growing its revenue base." However, nowhere in the *Monterosso* opinion does the

15

court suggest that the defendant's emphasis on this metric was the *only* reason for finding the misstatement material. In fact, the court clarified that "[w]hether a company advertises record breaking revenues or otherwise aggressively promotes its revenue numbers in its press releases may be considered a factor in determining whether a given misstatement is material." *Id.* at 1263-64. The Court finds that Defendants' instruction to potential investors to focus primarily on certain performance indicators does not delineate, as a matter of law, what a reasonable investor would find to be important in making an investment decision.

Defendants finally argue that misstatements were immaterial because the restated financial statements resulted in changes to net income before taxes, but not revenues or cash flow. While caselaw has suggested that revenue and cash flow are the best indicators of a company's financial health, *SEC v. Reyes*, 491 F.Supp.2d 906, 910 (N.D. Cal. 2007), courts have not held that errors related only to net income before taxes are necessarily immaterial. In fact, numerous federal courts have treated misrepresentations related to net income as material even where the impact on revenue was relatively insignificant. In *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d at 830, a 10(b) case, the Eight Circuit reversed the district court's finding that overstatements of net income in the amount of 8 percent were immaterial because the overstatement to revenue was only 0.4 percent. As noted in *Gebhardt*: "[m]ost investors would consider it significant, no matter what the mix of information available, that a company was not earning as much as it was claiming to earn. The onus is on the defendants to demonstrate why this assumption should not stand." *Id.* Defendants have failed to demonstrate why, in this case, the significant corrections to pretax income for the years in question would not be relevant to an investor, simply because the impact to revenues was less than 1%.

Considering the significant drops in stock price, the insufficiency of the prospectus warning, and the significant corrections to the company's pretax income the Court does not find the misstatements so clearly immaterial as to be immaterial as a matter of law, and so Plaintiffs have stated a claim under Section 11 of the 1933 Act. *See In re TETRA Technologies*, 2009 WL 6325540, *4.

## IV.

IT IS HEREBY ORDERED THAT Defendants' Motions to Dismiss (**Instrument Nos. 59 and 60**) are **DENIED.**

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the _____ day of January, 2014, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**